# ORIGINAL

# In the United States Court of Federal Claims

No. 16-1136C (Pro Se)
(Filed: April 26, 2017)

|  |  |  |
|---|---|---|
| JEFFREY BROWN, | ) | Keywords: Pro Se Complaint; Asset Forfeiture; Rules of the Court of Federal Claims 12(b)(1); Subject Matter Jurisdiction. |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**FILED**

**APR 26 2017**

U.S. COURT OF
FEDERAL CLAIMS

*Jeffrey Brown*, pro se, Fairfax, VA.

*William J. Grimaldi*, Senior Trial Counsel, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, with whom were *Brian A. Mizoguchi*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

The pro se plaintiff in this case, Jeffrey Brown, filed a complaint in this Court on September 14, 2016. Mr. Brown claims that he is entitled to funds that the United States Attorney's Office in Massachusetts has allegedly obtained through criminal and civil forfeiture in connection with a financial crime. The government has moved to dismiss Mr. Brown's complaint under Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC) for lack of subject matter jurisdiction. For the reasons discussed below, the government's motion is **GRANTED**, and Mr. Brown's complaint is **DISMISSED** without prejudice.

## BACKGROUND[1]

### I.    The Relevant Criminal and Civil Proceedings

In the mid-2000s, Mr. Brown was the victim of a fraudulent investment scheme. <u>See</u> Compl. at 1–2, Docket No. 1; Def.'s Mot. to Dismiss (Def.'s Mot.) App. at DA3–10,

---

[1] The facts set forth in this section are drawn from the allegations in Mr. Brown's complaint, which the Court assumes are true for purposes of deciding government's

Docket No. 5. In 2013, the perpetrators of the scheme either pleaded guilty or were convicted in the United States District Court for the District of Massachusetts on wire fraud, mail fraud, racketeering, and other charges. Def.'s Mot. at 2–3.

Soon thereafter, on June 11, 2013, Mr. Brown obtained a default judgment against the perpetrators in the United States District Court for the Eastern District of Virginia. Id. at 3–4. The district court awarded Mr. Brown damages in the amount of $10,925,000 based on allegations of fraud, civil conspiracy, and civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. See id.

Also in June 2013, the government instituted forfeiture proceedings in the criminal case against the perpetrators in the District of Massachusetts.[2] Id. at 4. Mr. Brown had already filed a third-party claim in that case, and he objected to the government's forfeiture proceedings, asserting that any orders of forfeiture issued by the District of Massachusetts would be deemed invalid based on the "Civil Money Judgment[]" he had been awarded by the Eastern District of Virginia. Id.; see also Def.'s Mot. App. at DA 19–20.

In October 2013, the District of Massachusetts sentenced the perpetrators to prison and issued monetary judgments against them. See Def.'s Mot. at 5. The judgments included a restitution order in the amount of $5,222,757.16 to be paid to the victims of the scheme, including $978,325 to be paid to Mr. Brown. Id.; see also Judgment in a Criminal Case at 6–7, United States v. Gilner, No. 10-cr-10199 (D. Mass. Oct. 23, 2013), ECF No. 205. Any payment that was not a payment in full was to be "divided proportionately" among the named victims of the scheme. Judgment, United States v. Gilner, No. 10-cr-10199, at 9. The court also ordered forfeiture of the perpetrators' assets in the same amount. See id.

To date, however, the government asserts that it has obtained just $42,000 in forfeited assets. See Def.'s Mot. at 6–7. Further, the district court in Massachusetts has since denied a motion Mr. Brown filed asking that court to "adjudicate the validity of [his] interest in [the perpetrators'] property/assets," reasoning that Mr. Brown is merely "an unsecured general judgment creditor" with respect to the perpetrators. Id. at 5–6 (first alteration in original); see also Docket Entry, United States v. Gilner, No. 10-cr-10199 (D. Mass. Feb. 21, 2016), Docket No. 253. As a consequence, the court observed, "[t]o the degree [that he] seeks some form of 'restitution,' his recourse would appear to be by a

_____

motion, as well as on jurisdictional facts set forth in the documents attached to the parties' filings.

[2] The indictment in the District of Massachusetts contained a forfeiture allegation providing that the United States would seek the forfeiture of any proceeds traceable to the fraudulent scheme. Def.'s Mot. at 3; see also Def.'s Mot. App. at DA14. Further, if directly forfeitable property was unavailable for forfeiture, the government would seek forfeiture of any other property or assets of the perpetrators, up to the value of the unavailable assets. Def.'s Mot. at 3; see also Def.'s Mot. App. at DA14.

petition directed to the Attorney General for restoration."[3] Def.'s Mot. at 6 (first alteration in original); see also Docket Entry, United States v. Gilner, No. 10-cr-10199 (D. Mass. Feb. 21, 2016), Docket No. 253 (citing United States v. Watkins, 320 F.3d 1279 (11th Cir. 2000)).

## II.    This Action

Mr. Brown filed his complaint in this Court on September 14, 2016. Docket No. 1. He claims that his action "involves Constitutional charges, grounds, [and] questions," and that he is "challeng[ing] the Constitutional violations of state and federal law, procedure and practice by state and federal officials and officers of Courts." Compl. ¶ 9. Further, he claims that he "brings [his] action through [the] civil RICO statute."[4] Id.

Although the complaint's factual allegations are somewhat difficult to parse, Mr. Brown appears to believe that the government has seized additional assets from the perpetrators of the fraud but has not sold those assets or paid out funds in restitution to the victims. See Compl. at 2–4, 14. He thus alleges that "[t]o the date of this filing apparently no restitution has been released to any of the victims in [the District of Massachusetts] case." Id. at 2 ¶ 7.

Further, Mr. Brown asserts "[t]hat there needs to be Discovery along with dates when any funds were returned to any of the victims to correct balances." Id. at 2 ¶ 8. To that end, his complaint lists various assets that he believes were owned by the scheme's perpetrators and that he appears to allege the government has seized or obtained through forfeiture. Id. at 3–4. He requests, among other things, that the government "explain what happened to [the] seized, forfeited, [or] frozen assets."[5] Id. at 3. His complaint also contains an allegation stating that "[t]he Freedom of Information Act should be Ordered to obtain what happened to all assets in the Government []Prosecutor['s] Control[]." Id. at 2 ¶ 7.

---

[3] The Attorney General's discretion to authorize the restoration of forfeited property is discussed in more detail below.

[4] In his response to the government's motion to dismiss, Mr. Brown also claimed that the Court has jurisdiction over his case "pursuant to the Administrative Procedures Act against a public administrative body for wrongful acts [of] Jurisdiction." See Am. Compl. with Clarification of Language [and] Pet'r Brown['s] Obj. to Resp't's Answers (Pl.'s Resp.) at 2 ¶ 1, Docket No. 7.

[5] Mr. Brown's complaint also includes a series of purported interrogatories requesting similar information. See Compl. at 4 (asking, among other things, "[w]hat happened to all [the] seized, forfeited assets . . . ?"; "[h]ow much funds are in government seized, forfeited accounts that can benefit victims of [the fraudulent scheme]?"; and "[w]hat happens to the seized, forfeited accounts of court cases when restitution is not returned to the victims?").

Mr. Brown requests an award of $30,000,000 in damages, including "monetary, personal, [and] punitive" damages, as well as "injunctive and specific performance relief." Id. at 14. He further requests that the Court order "[t]he Government, Department of Justice, Victims Restitution office, [etc. . . .], to contact the [v]ictims and to [c]ommunicate with them [about] when they will receive [their] restitution funds." Id. He also asks for "an Order from this Court to stop prosecutors from holding assets for their own gain." Id.

The government has moved to dismiss Mr. Brown's complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). Docket No. 5. Mr. Brown filed a document titled "Amended Complaint with Clarification of Language [and] Peti[ti]oner Brown['s] Objection to Respondent[']s Answers," Docket No. 7, which the Court treated as a response to the government's motion, see Order, Docket No. 6. The government has filed a reply in support of its motion. Docket No. 8.

## DISCUSSION

### I.    Legal Standards

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all undisputed facts in the pleadings and draws all reasonable inferences in favor of the plaintiff. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991).

It is well established that complaints that are filed by pro se plaintiffs, like this one, are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

Pursuant to the Tucker Act, the United States Court of Federal Claims has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). To invoke the Court's Tucker Act jurisdiction, a plaintiff must therefore establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). In other words, the plaintiff must identify a statute or provision of law that is "substantively money-mandating." McHenry v. United States, 367 F.3d 1370, 1377–78 (Fed. Cir. 2004) (citing United States v. Testan, 424 U.S. 392, 400 (1976)).

Further, the Court of Federal Claims has only limited power to provide equitable relief. See 28 U.S.C. § 1491(a)(2). Specifically, as relevant here, the Court of Federal Claims lacks the power to grant equitable relief unless such relief is "an incident of and collateral to a money judgment." James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) (quotation omitted); see also 28 U.S.C. § 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.").

## II.   Application of Standards to Mr. Brown's Complaint

Accepting the allegations in Mr. Brown's complaint as true and drawing all inferences in his favor, the Court concludes that Mr. Brown's claims do not fall within the Tucker Act's jurisdictional grant. Mr. Brown's primary claim is that the government has obtained money from the perpetrators of the fraudulent investment scheme via forfeiture but has failed to pay it out to the scheme's victims. See Compl. 2–4, 14; see also Pl.'s Resp. at 3 ¶ 5 (claiming that the government "has confiscated and impounded millions and/or billions of [dollars] and assets of [the] defendants . . . and is holding such funds"). But the statutes that govern the disposition of forfeited assets do not mandate the payment of money, notwithstanding that the presiding court may have issued a restitution order.

Rather, those statutes vest the Attorney General with discretionary authority to restore such funds to a crime's victims. See 18 U.S.C. § 981(e)(6) (authorizing the Attorney General to "transfer [forfeited] property on such terms and conditions as he may determine . . . as restoration to any victim of the offense giving rise to the forfeiture"); 21 U.S.C. § 853(i)(1) (authorizing the Attorney General to "restore forfeited property to victims . . . or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section")[6]; see also Adkins v. United States, 113 Fed. Cl. 797, 807 n.12 (2013) (observing that forfeited assets are made available to victims as restitution only at the Attorney General's discretion).

The Attorney General, in turn, has "delegated to the chief of [the Asset Forfeiture Money Laundering Section (AFMLS)], the authority . . . to restore forfeited property to victims or take other actions to protect the rights of innocent persons in civil or criminal forfeitures." Department of Justice, U.S. Attorneys' Manual tit. 9, § 9-121.100 (May 2010), https://www.justice.gov/usam/usam-9-121000-remission-mitigation-and-restoration-forfeited-properties (quotation omitted). Upon determining that restoration is appropriate, the chief of AFMLS "may authorize federally forfeited property or proceeds

---

[6] Although 21 U.S.C. § 853 expressly applies only to crimes involving controlled substances, it is incorporated by reference into the statutes governing criminal forfeitures that attend convictions for wire fraud, mail fraud, and racketeering. See 18 U.S.C. § 982(b)(1); 28 U.S.C. § 2461(c).

to be transferred to the [presiding] court for use in satisfaction of orders of restitution entered at sentencing." Id.

Because the forfeiture statutes place the decision to authorize restoration squarely within the Attorney General's discretion, they are not money-mandating statutes for purposes of establishing jurisdiction under the Tucker Act. See United States v. Navajo Nation, 537 U.S. 488, 506 (2003); Fisher, 402 F.3d at 1175–76; see also Huston v. United States, 956 F.2d 259, 261 (Fed. Cir. 1992) (statute authorizing pay increases for employees was discretionary and thus not money-mandating); Contreras v. United States, 64 Fed. Cl. 583, 593 (2005) (where a statute "does not use mandatory language," a "very strong . . . presumption arises that the . . . provision is non-money-mandating"). Accordingly, the Court lacks jurisdiction over Mr. Brown's claim regarding assets the government may have obtained by forfeiture from the investment scheme's perpetrators.

In addition, none of the constitutional provisions identified in Mr. Brown's complaint are money-mandating provisions within the ambit of the Tucker Act. Thus, neither Article III, Section 2 of the United States Constitution, nor the First, Fourth, Sixth, Eighth, or Fourteenth Amendments to the Constitution, nor the Due Process Clause of the Fifth Amendment mandate the payment of money. See Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (Due Process Clauses of the Fifth and Fourteenth Amendments); Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) (Eighth Amendment); United States v. Connolly, 716 F.2d 882, 887–88 (Fed. Cir. 1983) (First Amendment); Dupre v. United States, 229 Ct. Cl. 706, 706 (1981) (per curiam) (Fourth and Sixth Amendments); Gibson v. United States, 121 Fed. Cl. 215, 217 (2015) (Article III, Section 2, the First and Sixth Amendments, and the Due Process Clause of the Fifth Amendment); Gable v. United States, 106 Fed. Cl. 294, 298 (2012) (Sixth Amendment); Mendez-Cardenas v. United States, 88 Fed. Cl. 162, 167 (2009) (Article III, Section 2).

Further, the statutes Mr. Brown identifies as bases for the Court's jurisdiction— 42 U.S.C. §§ 1983, 1985, 1986; 28 U.S.C. §§ 1331, 1343, 1367(a); 18 U.S.C. §§ 1961–68 (i.e., RICO); and the Administrative Procedure Act, 5 U.S.C. §§ 701–06— either provide for exclusive jurisdiction in the United States District Courts or do not mandate the payment of money. See Julian v. United States, 658 F. App'x 1014, 1016–17 (Fed. Cir. 2016) (holding that RICO is not a money-mandating statute); Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006) ("[T]he A[dministrative] P[rocedure] A[ct] does not authorize an award of money damages at all . . . ."); Hickman v. United States, 122 Fed. Cl. 645, 651 (2015) (finding no jurisdiction in this Court to entertain claims under 28 U.S.C. § 1343 and 42 U.S.C. § 1985 because such claims may only be heard in the United States District Courts); Sharpe v. United States, 112 Fed. Cl. 468, 476 (2013) ("[J]urisdiction to hear [a] claim [under 28 U.S.C. § 1343] belongs exclusively to the district courts." (internal citations omitted)); Hall v. United States, 69 Fed. Cl. 51, 56 (2005) ("The United States Court of Federal Claims . . . is not a United States District Court and, therefore, does not have jurisdiction over claims arising under 28 U.S.C. § 1331."); Marlin v. United States, 63 Fed. Cl. 475, 476 (2005) (Court of Federal Claims "does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights

Act resides exclusively in the district courts."); see also 28 U.S.C. § 1367(a) (providing for supplemental jurisdiction only in the United States District Courts).

The Court also lacks jurisdiction to hear claims against defendants other than the United States. See United States v. Sherwood, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."). Accordingly, Mr. Brown's claims against state officials and any other parties besides the United States must be dismissed. See id.

Further, to the extent Mr. Brown seeks relief under the Freedom of Information Act (FOIA), the Court does not possess jurisdiction to hear such a claim. Instead, Congress has vested jurisdiction over FOIA claims in the United States District Courts. See Bernard, 59 Fed. Cl. at 503 ("This court does not have jurisdiction over FOIA claims."); Rogers v. United States, 15 Cl. Ct. 692, 698 (1988). Moreover, "FOIA does not create a right to money damages," and thus is not money-mandating. Miller v. United States, No. 15-646C, 2015 WL 4710354, at *3 (Fed. Cl. Aug. 7, 2015) (citing Snowton v. United States, 216 F. App'x 981, 983 (Fed. Cir. 2007)).

Finally, the Court has no jurisdiction to grant the equitable relief Mr. Brown requests in the absence of an award of monetary damages. Caldera, 159 F.3d at 580 (quoting 28 U.S.C. § 1491(a)(2)); see also Bobula v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992) (Court of Federal Claims may exercise its equitable powers only "if they are necessary for complete relief"). The Court thus lacks the power to order government officials to contact him or the other victims of the fraudulent scheme regarding the disposition of any assets under the District of Massachusetts's restitution order.

*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

In short, Mr. Brown has failed to allege the violation of any money-mandating statute or constitutional provision under the Tucker Act. Further, jurisdiction to hear many of his claims is vested solely in the United States District Courts. The Court also lacks jurisdiction over his claims against state officials. Finally, the Court cannot grant equitable relief in his favor absent a monetary award. Accordingly, the Court lacks subject matter jurisdiction over the claims set forth in Mr. Brown's complaint.

## CONCLUSION

For the reasons discussed above, the Court lacks subject matter jurisdiction over Mr. Brown's claims. Accordingly, the government's motion to dismiss his complaint is **GRANTED**, and Mr. Brown's complaint is **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

IT IS SO ORDERED.

_____
ELAINE D. KAPLAN
Judge